NO. 24-1198

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

REUBEN KING,
Appellant

APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE
IN CRIMINAL NO. 22-0215 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JACQUELINE C. ROMERO
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

JOSEPH A. LABAR
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8516

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

    I.    Subject Matter Jurisdiction ................................................1

    II.   Appellate Jurisdiction ....................................................1

STATEMENT OF ISSUES .........................................................................2

STATEMENT OF THE CASE ....................................................................3

    I.    Procedural History .........................................................3

    II.   Statement of Facts .........................................................5

        A.    The Offense Conduct ........................................5

        B.    The Motion to Dismiss the Indictment ............................8

        C.    The Post-Trial Motion .....................................11

        D.    The Forfeiture Order ......................................12

STATEMENT OF RELATED CASES ........................................................17

SUMMARY OF ARGUMENT ...................................................................18

ARGUMENT ..........................................................................................20

    I.    THE DISTRICT COURT CORRECTLY DENIED
           KING'S CONSTITUTIONAL CHALLENGES
           TO 18 U.S.C. § 922(a)(1)(A) ...........................................20

        A.    Section 922(a)(1)(A) Does Not Violate
              the Second Amendment Right to Keep
              and Bear Arms .............................................23

       1.    The plain text of the Second Amendment does not protect the commercial sale of firearms without a license ...................................... 28

       2.    The licensing requirement of Section 922 (a)(1)(a) is consistent with the nation's historical tradition of firearm regulations ................................................. 39

   B.    Section 922(a)(1)(A) is Not Unconstitutionally Vague as Applied to King and his Conviction Does Not Violate the Rule of Lenity ................................ 43

   C.    The Licensing Requirement Did Not Violate King's First Amendment or Statutory Right to Practice His Faith ........................................................ 50

II.    THE FORFEITURE OF THE FIREARMS AND AMMUNITION INVOLVED IN KING'S OFFENSE DOES NOT VIOLATE THE EIGHTH AMENDMENT ......................................................... 53

CONCLUSION ........................................................................... 58

# TABLE OF AUTHORITIES

## Cases

*Austin v. United States,*
    509 U.S. 602 (1993) ...............................................................14

*Beckles v. United States,*
    580 U.S. 256 (2017) .............................................................. 44

*District of Columbia v. Heller,*
    554 U.S. 570 (2008)........................................................passim

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011).........................................38, 39

*Ezell v. City of Chicago,*
    846 F.3d 888 (7th Cir. 2017) ............................................ 34

*Garland v. Range,*
    2024 WL 3259661 (U.S. 2024) ..........................................12

*Jackson v. City and County of San Francisco,*
    746 F.3d 953 (9th Cir. 2014)............................................. 34

*Kolender v. Lawson,*
    461 U.S. 352 (1983)............................................................ 44

*Koontz v. St. Johns River Water Mgmt. Dist.,*
    570 U.S. 595 (2013) ...........................................................51

*Lara v. Commissioner Pennsylvania State Police,*
    91 F.4th 122 (3d Cir. 2024)............................................... 32

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010)........................................................... 25

*New York State Rifle & Pistol Association v. Bruen,*
    597 U.S. 1 (2022).........................................................passim

*Range v. Attorney General,*
    69 F.4th 96 (3d Cir. 2023) ................................................................12

*Shaw v. United States,*
    580 U.S. 63 (2016) ............................................................................ 49

*Staples v. United States,*
    511 U.S. 600 (1994) ......................................................................... 44

*Teixeira v. County of Alameda,*
    873 F.3d 670 (9th Cir. 2017) ............................................ 33, 36-38, 41

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    2024 WL 2967340 (N.D. Tex. 2024) .................................................. 49

*United States v. Austin,*
    2024 WL 1580079 (S.D.N.Y. 2024) ................................................... 30

*United States v. Bajakajian,*
    524 U.S. 321 (1998) ..................................................................... 55, 56

*United States v. Burnett,*
    773 F.3d 122 (3d Cir. 2014) .............................................................. 54

*United States v. Chafin,*
    423 F. App'x 342 (4th Cir. 2011) ...................................................... 36

*United States v. Cheeseman,*
    600 F.3d 270 (3d Cir. 2010) ......................................................... 53, 56

*United States v. Christie,*
    825 F.3d 1048 (9th Cir. 2016)............................................................51

*United States v. Deare,*
    2023 WL 4732568 (W.D. La. 2023) ................................................... 30

*United States v. DeFelice,*
    2024 WL 3028425 (D. Conn. 2024) ................................................... 30

*United States v. DeMichael,*
    461 F.3d 414 (3d Cir. 2006) ............................................................... 54

*United States v. Ferro,*
    681 F.3d 1105 (9th Cir. 2012) ............................................................ 14

*United States v. Flores,*
    652 F. Supp. 3d 796 (S.D. Tex. 2023) ............................................... 30

*United States v. Fullmer,*
    584 F.3d 132 (3d Cir. 2009) ............................................................... 20

*United States v. Hoffecker,*
    530 F.3d 137 (3d Cir. 2008) ............................................................... 54

*United States v. Hosford,*
    843 F.3d 161 (4th Cir. 2016) ............................................................. 46

*United States v. James,*
    677 F. Supp. 3d 329 (D.V.I. 2023) ..................................................... 31

*United States v. King,*
    646 F. Supp. 3d 603 (E.D. Pa. 2022) .................................................. 3

*United States v. Lacerda,*
    958 F.3d 196 (3d Cir. 2020) ............................................................... 53

*United States v. Lanier,*
    520 U.S. 259 (1997) .......................................................................... 44

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ................................................. 26, 37, 38

*United States v. McNulty,*
    684 F. Supp. 3d 14 (D. Mass 2023) ............................................ 30, 33

*United States v. Moore,*
    2024 WL 3629416 (3d Cir. 2024) ...................................................... 49

*United States v. Murillo,*
    2024 WL 1517209 (C.D. Cal. 2024) ............................................. 30, 32

*United States v. Rahimi,*
    144 S. Ct. 1889 (2024) ............................................................ passim

*United States v. Tilotta,*
    2022 WL 3924282 (S.D. Cal. 2022) ................................................ 30

*Village of Hoffman Estates. v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ............................................................ 45

## Statutes and Rules

1 U.S.C. § 109 ................................................................. 46

18 U.S.C. § 921(a) ..........................................................21, 22

18 U.S.C. § 922(a) ...........................................2, 8, 20, 31, 49

18 U.S.C. § 923(a) ...................................................... 20, 21, 50

18 U.S.C. § 924(a)(1)(D) ..............................................8, 20

18 U.S.C. § 924(d)(3)(c) ...................................................12

18 U.S.C. § 3231 ...............................................................1

18 U.S.C. § 3554 ...............................................................13

18 U.S.C. § 3742 ...............................................................1

28 U.S.C. § 1291 ...............................................................1

28 U.S.C. § 2461(c) ...........................................................12

42 U.S.C. § 2000bb-1 .........................................................51

Fed. R. App. P. 28(a)(9)(A) ................................................. 54

# Other Authorities

1902 Ga. Laws 427.................................................................42

1905 N.C. Sess. Laws 545 ..................................................42

1927 Fla. Laws 206 .............................................................42

1927 N.J. Laws 742.............................................................43

Ga. Laws 427 ......................................................................42

*Gun Law History in the United States and the Second
Amendment Rights,*
    80 Law & Contemp. Probs. 55 (2017) .........................42, 43

N.C. Sess. Laws 545............................................................42

*Originalism-by-Analogy and Second Amendment
Adjudication,*
    133 Yale L.J. 99 (2023) ....................................................32

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on January 25, 2024, this Court has jurisdiction over this matter under 28 U.S.C. § 1291. In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

# STATEMENT OF ISSUES

1. Did the district court correctly find that 18 U.S.C. § 922(a)(1)(A) does not violate the Second Amendment?

2. Did the district court correctly conclude that Section 922(a)(1)(A) was not unconstitutionally vague as applied to King and the rule of lenity did not apply to King's prosecution?

3. Did the district court correctly conclude that the photograph requirement for obtaining a license to deal in firearms did not violate King's First Amendment and statutory rights to the free exercise of his Amish faith?

4. Does the order of forfeiture directing King to forfeit all of the firearms involved in his offense, as found by the jury, constitute an excessive fine in violation of the Eighth Amendment?

## STATEMENT OF THE CASE

## I. Procedural History

On June 28, 2022, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Reuben King with one count of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). App. 17. The indictment included a notice of forfeiture seeking to forfeit more than 600 firearms that were allegedly involved in King's offense. App. 18.

King filed a pretrial motion to dismiss the indictment. App. 53. The district court denied the motion in an opinion and order issued on December 14, 2022. App. 124-34.[1] King proceeded to trial, and on May 17, 2023, was convicted of the charged offense. The jury also approved the forfeiture of 612 of the 615 firearms listed in the notice of forfeiture. App. 172-86.

King filed a post-trial motion to set aside the verdict or alternatively, to renew his motion to dismiss the indictment. App. 186. The district court denied the motion in an opinion and order issued on July 31, 2023. App. 322-31.

---

[1] *See United States v. King*, 646 F. Supp. 3d 603 (E.D. Pa. 2022).

Prior to sentencing, the government filed a motion for a judgment and preliminary order of forfeiture, seeking to forfeit all of the firearms and ammunition involved in the defendant's violation of Section 922(a)(1)(A), as found by the jury. App. 134. King filed an objection to the forfeiture order. DDE # 75. The court approved the proposed forfeiture order on January 19, 2024. DDE # 78.

At the sentencing hearing on January 24, 2024, the district court found that King's guideline range was 41 to 51 months. *See* Statement of Reasons. The court varied from this range and sentenced King to a term of probation of 36 months. App. 154. The court also imposed a fine of $35,100, App. 159, and ordered King to forfeit the items that were listed in the preliminary order of forfeiture, App. 160-70.[2]

King filed a timely notice of appeal.

---

[2] Several other individuals have filed *pro se* petitions requesting the return of certain firearms that were subject to the forfeiture. DDE 83, 85, 86, 88, 91. These petitions are pending.

## II. Statement of Facts

### A.    The Offense Conduct.

The pertinent facts established at trial are entirely omitted in the appellant's brief. The prosecution is described, with gross inaccuracy, as one involving "an Amish full-time farmer offering to sell a gun to his neighbor . . . ." Br. 13.

The actual facts were summarized in the Presentence Report.[3] Appellant Reuben King ran a business selling or attempting to sell hundreds of firearms.

The investigation commenced when King sold five firearms to an undercover police officer in three separate transactions in late 2019 and early 2020. The transactions occurred in a barn on King's property in Lancaster, Pennsylvania. On each occasion, King offered to sell the undercover officer various "long" guns and described the features of the various firearms. During the transactions, the undercover officer saw (and filmed) approximately 150 firearms marked with price tags arrayed on tables in the barn.

---

[3] The evidence is also summarized in the government's response to the defendant's post-trial motion, App. 305-07, and the district court's opinion denying the defendant's post-trial motion, App. 322-23.

Because King did not have a license to sell firearms commercially, ATF agents served King with a cease-and-desist letter in June 2020. App. 123. The letter warned King that his actions could be defined as dealing in firearms and that he should cease such activity until obtaining a license as required by federal law. It also warned King of the possibility of prosecution if he continued to engage in such conduct without obtaining a license.

King told the agents that he was not in the business of selling firearms, but rather only occasionally sold personal firearms for which he had no further use. King asked the agents to describe the process of becoming a licensed dealer, and signed the cease and desist letter, acknowledging that he received and understood it.

King did not heed the ATF admonition letter, but thereafter sold a total of four firearms to two different undercover officers in three separate transactions. As before, King offered to sell the men a variety of guns. And as before, the troopers saw numerous guns (between 50 and 100) displayed on tables and marked for sale.

On January 12, 2022, ATF agents executed a search warrant at King's barn. Agents recovered approximately 615 guns, many marked with price tags; approximately 10,000 rounds of ammunition; detailed records showing thousands of purchases and sales of guns over many years; records

and receipts for advertisements placed in a local newspaper offering firearms for sale under several names and phone numbers;[4] and plastic bowls containing numerous pre-marked price tags sorted by various denominations.

Among the firearms recovered were approximately 30 brand-new, almost identical Savage Axis rifles, each in an unopened factory box, and all in a larger palleted shipping box, as well as a similar stack of 19 Silver Eagle shotguns, also new and still boxed.

King agreed to talk to the agents. He acknowledged that he had continued to sell firearms from his barn after he received the ATF cease and desist letter, but claimed that he misunderstood the letter. He also said that although many of the guns in the barn were marked for sale, some of them were part of his personal collection and those of his sons. He was vague about the source of his guns and claimed that many were from collections and auctions. He had no explanation for the pallet of brand-new guns. King admitted that he received many new firearms within the few months before the search, and that he planned to sell most of those guns.

---

[4] Agents subsequently discovered that between October 2019 and the date of the search in January 2022, King posted numerous advertisements in the local paper offering approximately 118 guns for sale. They also discovered sales advertisements for guns dating as far back as 2014.

In his brief in this appeal, King ignores the record, and instead describes his conduct as that of an Amish farmer who sold a few guns to a neighbor. Br. 10, 11, 13, 14, 34, 38. His account is flatly contradicted by the record, which established that he engaged in the conduct described above. King did not challenge the sufficiency of the evidence in his post-trial motion, did not object to the description of the offense conduct in the PSR, and did not contest any of the trial evidence in his sentencing memorandum. *See* DDE #74. King's current description of his offense conduct is false.

### B.     The Motion to Dismiss the Indictment.

The indictment charged that from on or about October 24, 2019, through on or about January 12, 2022, King "willfully engaged in the business of dealing in firearms without being licensed to do so under the provisions of Chapter 44, Title 18, United States Code," in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D). The indictment contained a notice of forfeiture, seeking the forfeiture of the more than 600 firearms and ammunition that were allegedly involved in the commission of the offense.

In his pretrial motion to dismiss the indictment, King argued that Section 922(a)(1)(A) was facially unconstitutional and unconstitutional as applied to him. King first contended that Section 922(a)(1)(A) and the

related statutory definitions were void for vagueness because the statute
failed to adequately define "engaged in business" and related terms, and
thus did not provide fair notice as to what conduct would violate the act.[5]
App. 88-91. He further argued that because of this fatal ambiguity, the
indictment should be dismissed under the rule of lenity.

Second, King contended that Section 922(a)(1)(A)'s licensing
provision violated the Second Amendment right to keep and bear arms.
App. 91-96. Citing the two-step analysis set forth *New York State Rifle &
Pistol Association v. Bruen,* 597 U.S. 1 (2022), he argued that the plain text
of the Second Amendment encompassed the right to sell firearms, as
buying and selling firearms was "[a]n inescapable precondition" of the right
to keep and bear arms. App. 91-92. He argued that because his alleged
conduct was protected by the plain text of the Amendment, the court must
proceed to step two of *Bruen* and determine if the statute was consistent
with the Nation's historical tradition of firearm regulation. King contended
that it was not, and Section 922(a)(1)(A) was thus facially unconstitutional.
App. 92-96.

---

[5] In support of his argument, King pointed to a 2016 ATF guidance
document that acknowledged that there was no "bright line rule" for when a
federal firearms license is required. King also cited the 2022 amendment to
some of the pertinent statutory definitions, claiming that the amendments
demonstrated that the prior definitions were ambiguous.

King further argued that even if Section 922(a)(1)(A) was not facially unconstitutional on these grounds, the statute was unconstitutional as applied to him because the requirement that he present a photographic identification to obtain a license to sell firearms violated his First Amendment right to the free exercise of religion and his statutory rights under the Religious Freedom Restoration Act. He argued that this requirement conflicted with his Amish faith, and thus constituted an "unconstitutional condition." App. 96-101.

The district court rejected each of King's arguments. With respect to King's argument that the statute was void for vagueness, the court stressed that King was required to show that the statute was unconstitutionally vague as applied to him, not as to others. App. 126. The court found that his alleged conduct was clearly prohibited by the statute, as it "went well beyond the occasional buying and selling that occurs with maintaining a personal collection or for pursuing a hobby." App. 127. The court noted that King could argue at trial that his conduct did not trigger the licensing requirement, but found that "neither the vagueness doctrine nor the rule of lenity is grounds for dismissing the indictment in this case." *Id.*

The court also concluded that Section 922(a)(1)(A) did not violate the Second Amendment right to keep and bear arms. Applying the *Bruen*

analysis, the court first found that the plain text of the Second Amendment did not encompass a right to sell firearms commercially without a license. App. 128. The court further observed that even assuming that the right to buy and sell firearms is implicit in the right to keep and bear arms as a precondition of that right, this did not extend to a right to the unlicensed sale of firearms as part of a regular course of business. *Id.* Because King did not satisfy the first prerequisite of the *Bruen* analysis, the court found it was unnecessary to consider whether the licensing requirement was consistent with the Nation's historical tradition of firearm regulation. *Id.*

In denying King's First Amendment claim, the court noted that King did not allege that he applied for a license without submitting a photograph and was denied a license on this basis, or that he sought and was denied a religious accommodation of this requirement. As such, King had failed to show that his freedom to exercise his faith was substantially burdened by the photo identification requirement, or that it constituted an unconstitutional condition. App. 130-31.

### C.   The Post-Trial Motion.

King reasserted his Second Amendment claim in his post-trial motion to "set aside the verdict" or in the alternative, to renew his motion to dismiss the indictment. King did not contend that the evidence was

insufficient to support his conviction; indeed, any such claim would have been frivolous in light of the extensive evidence of his gun sales business. Rather, King contended that the district court erred by finding that the plain text of the statute did not encompass the commercial sale of firearms without a license, and thus erred by not applying the second part of the *Bruen* analysis.[6]

The district court denied King's motion, finding that it had properly applied *Bruen*, and had correctly concluded that Section 922(a)(1)(A) did not violate the Second Amendment.

### D.    The Forfeiture Order.

The indictment was accompanied by a notice of forfeiture identifying 615 firearms and ammunition that were seized from King's barn. The notice directed that King forfeit to the United States all firearms and ammunition involved in the commission of the offense. This forfeiture was authorized by 28 U.S.C. § 2461(c)[7] and 18 U.S.C. § 924(d)(3)(c), which permitted the

---

[6] King claimed that this Court's decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), further supported his Second Amendment claim. After the Supreme Court issued its decision in *United States v. Rahimi,* 144 S. Ct. 1889 (2024), the Supreme Court granted certiorari in *Range*, vacated the decision, and reamended the case for further consideration. *See Garland v. Range*, 2024 WL 3259661 (U.S. July 2, 2024). King does not cite *Range* in this appeal.

[7] Section 2461(c) provides in pertinent part: "If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order

forfeiture of any firearms (or ammunition) that were involved in King's violation of Section 922(a)(1)(A). The forfeiture notice was submitted to the jury to determine the forfeitability of the listed items. The jury approved the forfeiture of 612 of the 615 firearms.

Prior to sentencing, the government filed a motion for judgment and preliminary order of forfeiture, seeking to forfeit the 612 firearms and ammunition involved in the defendant's violation of Section 922(a)(1)(A), as found by the jury. The motion included a proposed forfeiture order that listed each of the items to be forfeited. The order expressly stated that the court found that the forfeiture "was supported by the facts at trial and the jury's forfeiture determination," and that "the government had established the requisite nexus between such property and such offense." App. 134.

King filed a short opposition to the proposed forfeiture order. DDE # 75. King contended that he was not guilty of the charged offense, and, as such, the items were not subject to forfeiture. He also objected to the scope of the forfeiture, contending that some of the items sought to be forfeited were not involved in the charged offense and thus not subject to forfeiture. King further contended that the proposed forfeiture was an excessive fine in

---

the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code."

violation of the Eighth Amendment, claiming it as it was "ten times greater" than the statutory fine for the offense, and thus was "grossly disproportionate" to the permitted fine."[8] Lastly, King claimed that the proposed forfeiture violated the Second Amendment because there "was no history of these forfeiture laws precedential history at the time of the founding" as required by *Bruen*. King did not cite any evidence or present any further argument in support of these claims.

The government filed a response addressing each of King's objections. As to King's claim regarding the scope of the forfeiture, the government noted that the jury had found that all of the forfeited items were involved in King's Section 922(a)(1)(A) offense, and King was not permitted to challenge the jury's finding in this context. DDE # 77 at 1-2.

In addressing King's Eighth Amendment claim, the government asserted that King's one-sentence argument did not meet King's burden of demonstrating that the forfeiture was grossly disproportionate to his offense. The government stated that the forfeiture of the firearms was fully

---

[8] The defendant's full argument was as follows: "Defense objects to the forfeiture as an excessive fine under the Eighth Amendment, as grossly disproportionate to the permitted fine under the statute, at a rate of ten times higher or greater than the permitted fine, pursuant to *Austin v. United States*, 509 U.S. 602 (1993) and as applied to firearm seizures in *United States v. Ferro*, 681 F.3d 1105 (9th Cir. 2012)." DDE # 75 at para. 4.

supported by the uncontroverted evidence at trial regarding the scope of
King's firearms business and the jury's finding that 612 of the firearms were
involved in his violation of Section 922(a)(1)(A). As to King's claim that the
forfeiture vastly exceeded the statutory maximum fine for the offense, the
government noted that ATF had estimated that the firearms had a total
value of $135,000, which fell far below the statutory maximum fine of
$250,000, and that King did not present an alternative valuation. DDE # 77
at 4-7.

As to King's Second Amendment claim, the government stated that
the forfeiture order did not violate King's Second Amendment rights, as
Section 922(a)(1)(A) did not preclude King or anyone else from possessing
firearms, but only prohibited engaging in the business of dealing in
firearms without a license. Noting that the court had already correctly
determined that the Second Amendment right to keep and bear arms does
not encompass the right to sell firearms commercially without a license, the
government contended that the forfeiture of the firearms involved in King's
violation of 922(a)(1)(A) did not implicate King's Second Amendment right.
DDE # 77 at 8.

The district court approved and signed the proposed forfeiture order prior to sentencing, but did not otherwise address King's objections. DDE # 78. There was no further discussion of the forfeiture order.[9]

---

[9] King did not address the forfeiture order in his sentencing memorandum, and presents no evidence or claim that the propriety of the forfeiture order was discussed at sentencing.

## STATEMENT OF RELATED CASES

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

1. The district court correctly concluded that Section 922(a)(1)(A) does not violate the Second Amendment right to keep and bear arms. The plain text of the Amendment protects the right to keep and bear arms for self-defense; it does not protect the right to engage in the unlicensed commercial sale of firearms. Because the conduct regulated by Section 922(A)(1)(A) does not fall within the plain text of the Second Amendment, there is no need to consider whether the statute is consistent with the Nation's tradition of firearms regulation. Even if this second step applies, there are sufficient historical analogues regulating the sale and transfer of firearms.

2. Section 922(a)(1)(A) is not void for vagueness as applied to King. The statutory definitions at the time that King committed his offense plainly informed King that his conduct was prohibited by the statute. For this same reason, the rule of lenity has no application in this case.

3. The photograph requirement for obtaining a license to deal in firearms did not violate King's First Amendment and statutory rights to the free exercise of his Amish faith. King never applied for a license and was thus not denied a license on this basis, nor did he seek a religious

exemption from the requirement. King thus failed to demonstrate that this requirement violated his rights.

4. To the extent that King has presented a sufficient argument to allow appellate review, the forfeiture order directing King to forfeit all firearms and ammunition involved in his offense does not violate the Eighth Amendment. The jury found that the forfeited firearms were involved in his violation of Section 922(a)(1)(A), and the forfeiture is not grossly disproportionate to his offense.

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DENIED KING'S CONSTITUTIONAL CHALLENGES TO 18 U.S.C. § 922(a)(1)(A)

### Standard of Review

This Court exercises plenary review of a constitutional challenge to the application of a statute. *United States v. Fullmer*, 584 F.3d 132, 151 (3d Cir. 2009).

### Discussion

Appellant Reuben King contends that his conviction for dealing in firearms without a license should be vacated because 18 U.S.C. § 922(a)(1)(A)'s licensing requirement violates the Second Amendment right to keep and bear arms. Br. 26 ("18 U.S.C. § 923(a) and the violations thereof at §§ 922(a)(1)(A) and 924(a)(1)(D) are facially unconstitutional"); Br. 30 (same). King also asserts that Section 922(a)(1)(A) and the related definitions are unconstitutionally vague and his conviction violates the rule of lenity. Br. 30-33. Finally, King contends that Section 922(a)(1)(A) is unconstitutional as applied to him because the photograph requirement for licensing violates his First Amendment right to the free exercise of his religion. App. 33-34. As the district court correctly determined, King's claims are meritless.

King was convicted of dealing in firearms without a license in violation of Section 922(a)(1)(A). This statute makes it unlawful "for any person . . . except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce."

Section 923 sets forth the requirements for obtaining a federal firearms license: an individual must complete an application, pay a fee, and establish premises from which the individual will conduct his or her business. 18 U.S.C. § 923(a), (d).

Section 921 provides definitions of the relevant terms. As pertinent here, Section 921 defines a "dealer" as "any person engaged in the business of selling firearms at wholesale or retail," and a "licensed dealer" as "any dealer who is licensed under [federal law]." 18 U.S.C. § 921(a)(11).

At the time King committed his offense,[10] the term "engaged in the business" was defined as:

> a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the

---

[10] As King notes, Br. 16-17, some of these definitions were amended in 2022.

enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.

18 U.S.C. § 921(a)(21)(C).

The statute provided that a person acts "with the principal objective of livelihood and profit" when:

> the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, that proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22).

Taking these definitions together, Section 922(a)(1)(A) forbids an unlicensed person to devote time, attention, and labor to selling firearms as a regular course of trade or business for the purpose of obtaining pecuniary gain. By its plain terms, the statute does not cover "occasional sales" made "for the enhancement of a personal collection or for a hobby" or sales of a personal collection. The jury in this case was instructed consistently with these definitions.

**A.    Section 922(a)(1)(A) Does Not Violate the Second Amendment Right to Keep and Bear Arms.**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Amend. II.

In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court held that regardless of militia service, the Second Amendment guarantees to an individual the right to possess a handgun in his home for self-defense. *Id.* at 584. In so holding, *Heller* began with a "textual analysis" focused on the "normal and ordinary" meaning of the Second Amendment's language as it was understood at the time of the nation's founding. 554 U.S. at 576-77, 581, 584. The Court concluded that the Amendment's operative clause—"the right of the people to keep and bear Arms shall not be infringed"—"guarantee[s] the individual right to possess and carry weapons in case of confrontation." The Court explained that "to keep" means "to have" or to possess. *Id.* at 583. The Court stated that "to bear" means "to carry, but when used with "arms," "the term has a meaning that refers to carrying for a particular purpose—confrontation." *Id.* at 584 (also observing that to "wear, bear, or carry upon the person or in the clothing or in a pocket, for the purpose of being armed and ready for

offensive or defensive action in a case of conflict with another person")
(citations omitted).

The Court further explained that its conclusion that the Second
Amendment guarantees "the individual right to possess and carry weapons
in case of confrontation" was "strongly confirmed by the historical
background of the Second Amendment." *Id.* at 592 ("We look to this
[historical background] because it has always been widely understood that
the Second Amendment . . . codified a pre-existing right."). The Court found
that it was unnecessary to apply any standard of scrutiny to the District of
Columbia's ban on possessing handguns in a home, observing that the
challenged law would be unconstitutional "[u]nder any of the standards of
scrutiny . . . applied to enumerated constitutional rights." *Id.* at 628-30.

In so holding, the Court stressed that "the right secured by the Second
Amendment is not unlimited." *Id.* at 626. In addition to stating that the
right to keep and bear arms belonged to "law-abiding, responsible citizens,"
*id.* at 635, the Court specifically stated that "nothing in [its] opinion should
be taken to cast doubt on longstanding prohibitions on the possession of
firearms by felons and the mentally ill . . . or laws imposing conditions and
qualifications on the commercial sale of arms"—all of which the Court
deemed "presumptively lawful," *id.* at 626-27 & n.26.

Two years after *Heller*, in *McDonald v. City of Chicago,* a plurality of the Court reaffirmed that individual self-defense is "the central component" of the Second Amendment right. *McDonald v. City of Chicago,* 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 594). The Court "repeat[ed]" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . ., or laws imposing conditions and qualifications on the commercial sale of firearms.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27). After determining that the Second Amendment is "fully applicable to the States" under the Fourteenth Amendment, *McDonald* held that municipal statutes banning handguns in the home violated the Second Amendment to keep and bear arms for self-defense.

Neither *Heller* nor *McDonald* established the precise standard by which lower courts should assess the constitutionality of firearms regulations. Using the analysis applied in these cases, the Courts of Appeals, including this Court, developed a two-step framework for analyzing Second Amendment challenges. At the first step, courts would determine whether the challenged law regulates activity falling outside the scope of the Second Amendment based on its text and history. *See Bruen*, 597 U.S. at 17 (the courts "coalesced around a 'two-step' framework for

analyzing Second Amendment challenges that combines history with means-end scrutiny").[11] If the regulated conduct falls beyond the Amendment's scope, the activity would be "categorically unprotected and the inquiry stops there. If the regulated activity is not categorically protected or it is unclear if it is covered, the courts applied means-end scrutiny to determine if the regulation violated the Second Amendment. *Id.*

In *Bruen*, the Court rejected the second step of this standard as "one step too many," declaring that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 19. The Court announced a new two-step standard:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (citation omitted).

---

[11] *See e.g., United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) ("First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee . . . . If it does not, our inquiry is complete. If it does, we evaluate the law under some form of means-end scrutiny.").

Thus, *Bruen* set a clear standard: the Second Amendment must be applied based on its plain text. Only when the challenged conduct is covered by the "plain text" of the Amendment does a court proceed to step two and consider whether the regulation is consistent with the Nation's historical tradition of firearms regulation.

Applying this analysis, *Bruen* held that "consistent with *Heller* and *McDonald*, the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 8. The Court struck down a New York law requiring that an individual demonstrate a heightened risk of being attacked in order to obtain a permit to carry a concealed handgun for self-defense.

Concurring opinions of three of the Justices who joined the six-justice majority emphasized that *Heller's* endorsement of various regulations persuasive. Justice Alito wrote: " today's decision therefore holds that a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for this purpose. That is all we decide . . . [the decision] does not disturb anything that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 597 U.S. at 71-72. Justice Kavanaugh, in a concurring opinion joined by Chief Justice Roberts,

underscored that "as *Heller* and *McDonald* established and the Court today again explains, . . . the Second Amendment allows a variety of gun regulations." Justice Kavanaugh went on to repeat the "presumptively lawful" paragraphs from *Heller* and *McDonald*, including the statement regarding "laws imposing conditions and qualifications on the commercial sale of arms." *Bruen*, 597 U.S. at 81 (Kavanaugh, J. concurring). *See also United States v. Rahimi*, 144 S. Ct. 1889, 1903 (2024) ("*Heller, McDonald,* and *Bruen* did not "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment . . . . Nor do we do so today. Rather, we conclude only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment.").

> **1.    The plain text of the Second Amendment does not protect the commercial sale of firearms without a license**

Under *Bruen*, courts must first analyze whether the plain text of the Second Amendment covers the conduct regulated by the firearm statute at issue. As noted above, in determining whether the conduct regulated by a statute is covered by the plain text of the Second Amendment, courts look to the "normal and ordinary meaning of the Second Amendment's language." *Bruen*, 597 U.S. at 19. *Bruen* confirms that the plain text of the

Amendment—the right to keep and bear arms—"guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 20 (quoting *Heller*, 554 U.S. at 592).[12]

This case does not involve King's right to keep or bear arms for purposes of self-defense. Rather, the question before the Court is a limited one:  whether the text of the Second Amendment encompasses a person's right to sell firearms without a license as a regular course of business for the purpose of making a profit. The statute explicitly excludes noncommercial sales, such as sales from one's own personal collection, sales meant to enhance one's hobby, and infrequent sales or exchanges.

As the district court correctly concluded, the plain text of the Amendment does not protect the conduct prohibited by the statute, that is engaging in the business of selling firearms without obtaining a license. To

---

[12]  *Bruen* repeatedly referred to the conduct protected by the text of the Amendment as the individual right to keep and bear arms for self-defense. *See* 597 U.S. at 26 (Second Amendment "'surely elevates above all other interests the right of law abiding, responsible citizens to use arms' for self-defense") (quoting *Heller*, 554 U.S. at 635); *id.* at 29 ("As we stated in *Heller* and repeated in *McDonald,* 'individual self-defense is the 'central component' of the Second Amendment right.'"); *id.* at 32 ("*Heller* further confirmed that the right to 'bear arms' refers to the right to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offense or defensive action in a case of conflict with another person.'"); *id.* at 32-33 ("self-defense is 'the central component of the [Second Amendment] right itself'").

our knowledge, all other district courts that have considered this issue post-*Bruen* have concluded that the plain text of the Second Amendment does not protect the conduct regulated by Section 922(a)(1)(A). *See, e.g., United States v. DeFelice*, 2024 WL 3028425, at *5 (D. Conn. June 17, 2024) (DeFelice's manufacturing of and dealing in firearms does not fall within plain text of the Second Amendment); *United States v. Austin*, 2024 WL 1580079, at *5 (S.D.N.Y. Apr. 11, 2024) ("the conduct regulated by 18 U.S.C. § 922(a)(1)(A) and for which Austin has been indicted is not covered by the plain text of the Second Amendment"); *United States v. Murillo*, 2024 WL 1517209, at *3 (C.D. Cal. Apr. 8, 2024) (conduct in violation of 922(a)(1)(A) does not fall within the plain text of the Second Amendment ); *United States v. Deare*, 2023 WL 4732568, at *2 (W.D. La. 2023) (agreeing that licensing requirement of § 922(a)(1) does not affect an individual's rights to possess firearms); *United States v. McNulty*, 684 F. Supp. 3d 14, 19 (D. Mass 2023) (the plain text of the Second Amendment does not cover commercial dealing in firearms regulated by § 922(a)(1)(A) sufficient to implicate the Second Amendment); *United States v. Flores*, 652 F. Supp. 3d 796, 800-01 (S.D. Tex. 2023) ("selling guns at wholesale or retail" does not fit into the plain meaning of the text of the Second Amendment); *United States v. Tilotta*, 2022 WL 3924282, at *6 (S.D. Cal. Aug. 30, 2022) (the

plain text of the Second Amendment does not cover the commercial sale and transfer of firearms). *See also United States v. James*, 677 F. Supp. 3d 329 (D.V.I. 2023) (Section 922(a)(5), which prohibited unlicensed individual from transferring firearms to another unlicensed individual residing in different state, fell outside the plain text of the Second Amendment and thus was presumptively lawful; statute targeted transfer of firearm and did not criminalize mere possession, and statute prevented non-law-abiding citizens from circumventing reasonable commercial regulations, and thus did not prevent qualified citizens from purchasing guns lawfully in the jurisdiction in which they resided or visited).

As he must, King acknowledges that the plain text of the Amendment does not explicitly protect the right to sell firearms commercially without obtaining a license. Rather, he contends that the purchase and sale of firearms is a necessary precondition of the right to keep and bear arms, and is thus implicitly protected by the Amendment. Br. 25. His argument fails.

The district court correctly noted that *Bruen's* textual analysis focuses on the rights established by the plain text of the Second Amendment, not ancillary or collateral rights that may flow from that right. App. 128 (*Bruen* directs a court to look at the Second Amendment's plain text; "it does not consider 'implicit' rights that may be lurking beneath the surface of the

- 31 -

plain text."). *Bruen* "announced a new two-step analytical approach" that "requires two distinct analytical steps to determine the constitutionality of a firearm regulation." *Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122, 129-30 (3d Cir. 2024). *Bruen* relegates the historical analysis to the second step, and directs that this only applies when the plain text of the Second Amendment covers an individual's conduct. See Joseph Blocher, Eric Ruben, *Originalism-by-Analogy and Second Amendment Adjudication*, 133 Yale L.J. 99, 115 (2023) ("Since the word "when" functions as a conditional, the reach of *Bruen's* historical-analogical test appears limited only to those cases already covered by the "plain text" of the Amendment.").

Thus, the plain text of the Amendment does not protect the right to engage in the unlicensed commercial sale of firearms. But as the district court further observed, even assuming that the text of the Second Amendment protects the right to buy and sell firearms as a necessary precondition of the right to keep and arms for self-defense, it does not extend to the right to sell firearms commercially as an ongoing business without obtaining a license to do so. *Id.*[13]

_____

[13] *See also Murillo*, 2024 WL 1517209, at *3 ("although *Murillo* is correct that the right to lawfully purchase a firearm is a prerequisite to the right to keep and bear arms, this protection does not extend to include the

This conclusion is supported by the decision in *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc). In that case, a prospective gun store owner challenged a county zoning ordinance that prohibited gun stores in certain locations. The plaintiff argued that the ordinance violated his potential customers' Second Amendment right to acquire firearms, and violated his Second Amendment right to sell firearms, which was "independent of the rights of his potential customers." *Id.* at 676-77, 681.

In addressing the claim that the ordinance violated prospective purchasers' right to keep and bear arms by preventing them from acquiring firearms, the court recognized that "after *Heller*," courts of appeals have held that the Second Amendment protects "ancillary rights necessary to the realization of the core right to possess a firearm for self-defense." *Id.* at 677. The court noted as examples of such ancillary rights the right to possess ammunition and to have access to firing ranges. In those situations, courts had found that the was a protected ancillary right, and applied means-end scrutiny to determine if the regulations violated the Second Amendment.[14]

---

right to engage in the business of dealing firearms"); *McNulty*, 684 F. Supp. 3d at 20 (recognizing that the plain text of the Second Amendment suggests that the right to keep firearms necessarily includes an ability to purchase, sell, or otherwise transfer firearms, but does not extend to an unlimited right to sell firearms commercially).

*Id.* at 677-78. The Ninth Circuit agreed that the "sale of firearms is a necessary prerequisite" to the Second Amendment right to keep arms for self-defense, and was thus afforded some Second Amendment protection. It nevertheless found that under any level of scrutiny, the complaint in that case failed to state a plausible claim that the ordinance "impedes Alameda County residents from acquiring firearms." *Id.* at 678-79.

In addressing Teixeira's claim that the Second Amendment's right to keep and bear arms encompassed the right to sell firearms, the court first observed that "*Heller's* assurance that laws imposing conditions and qualifications on the commercial sale of firearms are presumptively lawful" strongly suggested that the Second Amendment did not protect a freestanding right to sell firearms. *Id.* at 682. The court nonetheless went on to apply a full textual and historical analysis.

---

[14] The court cited *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) (holding that Chicago's zoning regulations for shooting ranges violated the Second Amendment right to keep and bear arms because the regulations so severely limited the location of shooting ranges that there were no publicly accessible shooting range in Chicago); and *Jackson v. City and County of San Francisco*, 746 F.3d 953, 968-69 (9th Cir. 2014) (recognizing that "restrictions on ammunition may burden the core Second Amendment right of self-defense" and applying intermediate scrutiny in determining that the restriction at issue did not offend the Second Amendment).

In discussing the text of the Second Amendment, the court observed that "'the right of the people to keep and bear Arms' confers a right on the 'people' who would keep and use arms, not those desiring to sell them." *Id*. at 683. Citing *Heller's* interpretation of the terms "keep" and "bear," the court concluded that "[n]othing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons." *Id*. at 683.

The court then considered the "historical understanding" of the scope of the right, and determined that the "historical record confirms that the right to sell firearms was not within the 'historical understanding of the scope of the [Second Amendment] right.'" *Id*. at 683; *see also id*. at 686-87. The court concluded that that the Second Amendment does not confer "a freestanding right, wholly detached from any customer's ability to acquire firearms, upon a proprietor of a commercial establishment to sell firearms." *Id*. at 682; *see also Id*. at 686-87 ("no historical authority suggests that the Second Amendment protects an individual's right to sell a firearm unconnected to the rights of citizens to "keep and bear" arms"). The court further observed that its conclusion "that the Second Amendment does not confer a freestanding right to sell firearms is fully consistent with *Heller*, which closely examined the historical record and concluded that, at its core,

the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 687 (citing *Heller*, 554 U.S. at 635).

Although the *Teixeira* decision predates *Bruen*, it is faithful to *Bruen's* analysis in scrutinizing the text of the Amendment and determining that the text did not provide a freestanding right to sell firearms commercially. Moreover, *Teixeira* went further than the analysis now required by *Bruen;* after determining that the text did not protect the unfettered right to sell firearms, it considered whether such a right was within the historical understanding of the scope of the right to keep and bear arms. Notably, *Teixeira* never reached the "means-end" step eliminated by *Bruen*.[15]

*Teixeira's* conclusion that the right to keep and bear arms for self-defense does not encompass the freestanding right to sell guns commercially is sound and persuasive.[16] King does not acknowledge

---

[15] *See also United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. 2011) (unpublished) (in applying *Heller* and holding that the defendant's Second Amendment right to keep and bear arms was not violated by his conviction for selling a firearm to a person he knew was an unlawful drug user, observing that there was no authority that even "remotely suggests that, at the time of its ratification, the Second Amendment was understood to protect an individual's right to sell a firearm").

[16] Notably, King does not assert that the statute violates his or any other person's right to acquire firearms; indeed, any such claim would fail.

*Teixeira*, nor any of the other decisions contrary to his position. Rather, he relies on general statements in pre-*Bruen* cases that did not consider the statute at issue in this case and applied the two-step process explicitly rejected by *Bruen*. Br. 25. He places special reliance on the dicta found in a footnote in this Court's now-abrogated decision in *United States v Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). *Marzzarella*, however, had nothing to do with a right to engage in the business of dealing in firearms without a license. The defendant there challenged the constitutionality of the statute forbidding the possession of a firearm with an obliterated serial number. In upholding the statute, the Court observed in dictum that an overall ban on gun sales "would be untenable under *Heller*" because a total prohibition would severely limit the ability of citizens to acquire firearms. 614 F.3d at 92 n.8. The Court used the commercial sales of firearms as an example of how the now abrogated "second step" would be hypothetically applied under its reading of *Heller*, stating:

> Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment under this reading. *Heller* endorsed "laws imposing conditions and qualifications on the commercial sale

---

And unlike the situation in *Teixeira*, where the ordinance prevented licensed dealers from opening businesses in certain locations, Section 922(a)(1)(A)'s licensing requirement does not prohibit the commercial sale of firearms at all, but merely requires a person who operates such a business to obtain a license to do so. In short, the statute plainly does not prevent a person who has a right to possess a firearm from doing so.

> of firearms." 128 S. Ct. at 2817. In order to uphold the
> constitutionality of a law imposing a condition on the commercial sale
> of firearms, a court necessarily must examine the nature and extent of
> the imposed condition. If there were somehow a categorical exception
> for these restrictions, it would follow that there would be no
> constitutional defect in prohibiting the commercial sale of firearms.
> Such a result would be untenable under *Heller*.

614 F.3d at 92 n.8.

This comment does not suggest that the conduct regulated by Section 922(a)(1)(A) is encompassed by the text of the Second Amendment. Indeed, *Marzzarella* explicitly recognized that laws regulating the commercial sale of firearms were presumptively valid under *Heller*. *Id.* at 88. As *Teixeira* noted, *Marzzarella* did not conflict with its holding that the Second Amendment did not encompass a freestanding right to sell arms, as *Marzzarella* "did not consider a situation in which the right of citizens to acquire and keep arms was not significantly impaired, yet commercial retailers were claiming an independent right to engage in sales." *Teixeira*, 873 F.3d at 688.

King also cites *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011), where the Seventh Circuit held that an outright ban on shooting ranges within city limits was impermissible. The Court, citing *Heller*, recognized the core of the Second Amendment right, writing that "the 'central component' of the Second Amendment is the right to keep and bear

arms for defense of self, family, and home." *Id*. The Court engaged in the now-abrogated two-step analysis and held that there was an implied right to acquire and practice with firearms that was "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense." *Id*. at 708. The court went on to apply the means-end scrutiny rejected in *Bruen*. *Ezell* does not support the conclusion that the plain text of the Second Amendment protects the unlimited individual right to sell firearms, as a business, without a license.

In short, the plain text of the Second Amendment does not protect the conduct regulated by Section 922(a)(1)(A). As the district court correctly found, this ends the inquiry, and there is no need to proceed to the second step of *Bruen* and consider the historical treatment of the sale of firearms.

Nevertheless, even if the plain text of the amendment extends to the conduct regulated by the statute, and the second step of *Bruen* applies, there are sufficient historical analogues of the regulation of the sale and transfer of firearms.

### 2.    The licensing requirement of Section 922(a)(1)(a) is consistent with the nation's historical tradition of firearm regulations.

*Bruen* stated that in determining whether a law is consistent with the historical tradition of that regulation, courts must "reason[ ] by analogy,"

which "requires a determination of whether the two regulations are relevantly similar." *Bruen*, 597 U.S. at 28-29 (quotation marks omitted). *Bruen* did not present an "exhaustive survey of the features that render regulations relevantly similar," but established as the central inquiry "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id*. at 29. "[A]nalogical reasoning" is not "a regulatory straightjacket." *Id*. at 30. It "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id*. (emphasis in original). *Bruen* further stated that court must give greatest weight to the laws of the Colonies and early Republic, as well as to the period of English law between 1660 and 1688. *Bruen*, 597 U.S. at 33-35; *see also Heller*, 554 U.S. at 594-95.[17]

In *Rahimi,* the Supreme Court observed that "some courts have misunderstood the methodology of [the Court's] recent Second Amendment cases," which "were not meant to suggest a law trapped in amber." *Rahimi*, 144 S. Ct. at 1897. Just as the Second Amendment is "not

---

[17] In contrast, King's entire argument on this point is that *federal* regulation of firearms did not commence until the 20th century. Br. 13-14, 28-29. This myopic focus ignores completely the required examination of colonial and state law.

limited only to those arms that were in existence at the founding," so too it "permits more than just those regulations identical to ones that could be found in 1791." *Id.* at 1897-98.

*Rahimi* stressed that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Rahimi*, 144 S. Ct. at 1898 (emphasis added). Quoting *Bruen*, the Court emphasized that even "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" *Id.* (quoting *Bruen*, 597 U.S. at 30). The Court repeated: "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' " *Id.* (quoting *Bruen*, 597 U.S. at 30).

Applying these principles, the licensing requirement in Section 922(a)(1)(A) is analogous to a variety of historical laws regulating firearms and gunpowder. In considering the historical understanding of the Second Amendment scope of the Second Amendment right, *Teixeira* reviewed the historical regulation of the sale and trade of firearms. *Teixeira*, 873 F.3d at 685-86. The court noted that "colonial government regulation included some restrictions on the commercial sale of firearms, observing that "the colonies of Massachusetts, Connecticut, Maryland, and Virginia all passed

laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians." *Id.* at 685; *see also* 6 Statutes at Large of Pennsylvania from 1682 to 1801 at 319-320 (1809) (1763 law); Laws and Ordinances of New Netherland 1638-1674 (1868) at 18-19 (1639 ordinance), 47 (1645 ordinance), 278 (1656 ordinance). The court further noted that Connecticut banned residents from selling firearms outside the colony, *id.* while Virginia provided that "people were only at 'liberty to sell arms and ammunition to any of his majesties loyal subjects inhabiting this colony.'" *Id.* at 685 n.18.

Further, and consistent with this Founding Era tradition, states continued to enact laws governing the manufacture, sale, and transport of guns and/or gunpowder in the 18th and 19th centuries. *See* Robert Spitzer, *Gun Law History in the United States and the Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 74 (2017). "For example, Florida (1927), Georgia (1902), and North Carolina (1905) gave localities the power to license, regulate, or even bar the commercial sale of firearms." *Id.* at 75 (citing Act of June 6, 1927, ch. 12548, § 19(13), 1927 Fla. Laws 206, 212, Act of Dec. 18, 1902, part III, tit. I, no. 192, § 16, 1902 Ga. Laws 427, 434-35, and Act of Mar. 6, 1905, *24 ch. 188, § 6, 1905 N.C. Sess. Laws 545, 547.) A 1927 New Jersey law "prohibited pawn brokers from selling or in any

manner transferring any firearms." *Id.* (citing Act of Mar. 30, 1927, ch. 321, § 1, 1927 N.J. Laws 742, 742.).

King does not acknowledge that there were any such laws, but instead claims that there was no federal regulation of the commercial sale of firearms until the 1930s. Br. 29-30. King misunderstands *Bruen's* historical inquiry, as clarified by *Rahimi. Bruen* emphasized that the government need only identify a "historical analogue, not a historical twin." As explained above, there are sufficient historical analogues regulating the sale and transfer of firearms. Thus, although it is unnecessary to reach this step, the statutory scheme satisfies the second step of the *Bruen* analysis.

In sum, the district court correctly determined that Section 922(a)(1)(A)'s licensing requirement does not violate the Second Amendment right to keep and bear arms.

### B. Section 922(a)(1)(A) is Not Unconstitutionally Vague as Applied to King and his Conviction Does Not Violate the Rule of Lenity.

King next argues that the statute is void for vagueness and his conviction violates the rule of lenity. Br. 30-33. He claims that the "continuous shifting, definitional changes" demonstrate that the previous definitions under which he was indicted were impermissibly vague, "requiring Mr. King, a man of common intelligence, to guess at its

meaning." Br. 30. He does not discuss the district court's ruling on this issue, but generally claims that the district court "failed to recognize these Constitutional considerations." Br. at 33. As the district court correctly found, King's argument is meritless.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Beckles v. United States*, 580 U.S. 256, 262 (2017) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). The rule of lenity provides that "an ambiguous criminal statute is to be construed in favor of the accused." *Staples v. United States*, 511 U.S. 600, 619 n.17 (1994). The two doctrines work together to ensure that criminal statutes provide a fair warning as to what conduct is unlawful. *See United States v. Lanier*, 520 U.S. 259, 266 (1997).

In his pretrial motion to dismiss the indictment, King claimed that Section 922(a)(1)(A) and the related statutory provisions were void for vagueness, both facially and as applied to him. He argued that the statute failed to adequately define "engaged in business" and its related terms, and thus did not provide fair notice as to what conduct would violate the act. App. 90-91. As support for his argument, King pointed to a 2016 ATF

publication that provided guidance on the licensing requirement and the conduct that triggered that requirement, App. 54-68, which recognized that there was no "bright line rule" for when a federal firearms license is required.[18] King also noted that the statutory definitions were amended in 2022 and claiming, without support, that the definitions were amended because the prior definitions were vague and ambiguous. App. 87. He further argued that because of this fatal ambiguity, the indictment should be dismissed under the rule of lenity.

As the district court correctly observed, King's vagueness claim "must be examined in the light of the facts of the case at hand." App. 126, citing *Village of Hoffman Estates. v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."). Under this standard, if a law clearly prohibits a defendant's conduct, the defendant cannot challenge the law on the ground that it may be vague as applied to other defendants.

---

[18]  The document stated: "Federal law does not establish a 'bright-line' rule for when a federal firearms license is required. As a result, there is no specific threshold number or frequency of sales, quantity of firearms, or amount of profit or time invested that triggers the licensure requirement." App. 62.

The district court correctly determined that the licensing requirement was not unconstitutionally vague as applied to King. After noting the pertinent statutory definitions, the court observed that the statutes made clear that a person "could sell and buy firearms occasionally if it was to enhance a personal collection or as a hobby," and could "sell all or part of his personal collection of firearms" without acquiring a license.[19] In contrast, those who sold firearms as "a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms" were required to obtain a license. App. 125-26.[20]

---

[19] The court properly focused on the law in existence at the time of King's offense. In contrast, in his brief, King addresses at length changes in the statutory and regulatory provisions beginning in 2022. The government does not agree that the amendments altered the law at all as applied to King. But that is immaterial, as even a substantive amendment would not disturb King's liability under the law in effect at the time of his conduct. *See* 1 U.S.C. § 109 (the savings clause).

[20] As the government noted in its response to King's motion to dismiss, courts had uniformly rejected claims that Section 922(a)(1)(A) was void for vagueness. App. 111-12 (listing cases). *See, e.g., United States v. Hosford*, 843 F.3d 161, 170-171 (4th Cir. 2016) ("the prohibition against unlicensed firearm dealing . . . regulates only individuals who regularly sell, for the principal purpose of accruing profit or maintaining a livelihood, firearms that are not part of their personal collection or for their hobby . . . [W]here, as here, the statute clearly gave notice to [defendant] that he ought not to regularly sell firearms that he only purchased and resold for profit—firearms not acquired for the purpose of a personal collection or for the hobby of collecting firearms—his as-applied vagueness challenge fails.").

Turning to King's conduct, the court observed that the indictment, and the government's description of his alleged conduct in its response to his motion, clearly established that King's alleged conduct was proscribed by Section 922(a)(1)(A). The court explained that "[e]ven though there is not a bright-line rule for how many firearm transactions it takes to trigger the need for a license, King's alleged conduct clearly trips that trigger because it goes well beyond the occasional buying and selling that occurs with maintaining a personal collection or for pursuing a hobby." App. 126-27.

The court's conclusion was fully supported by the record. The indictment charged King with dealing in firearms without a license, for more than two years, for personal profit, in knowing violation of the law, and identified more than 600 firearms that were allegedly involved in his offense. The evidence at trial established that King sold a total of nine guns to undercover officers on five separate occasions, had hundreds of guns stored in his barn, many of which were displayed and marked with price tags, possessed records for thousands of sales, and placed advertisements offering firearms for sale. Indeed, King apparently recognizes that the trial evidence defeated this claim, as he did not challenge the sufficiency of the

evidence or renew this particular argument in his post-trial motion, and elects not to advise this Court of any of these damning facts.

As he does throughout his brief, King completely ignores the indictment and evidence regarding his conduct. King was clearly on notice that his conduct fell within the licensing requirement. Indeed, ATF explicitly told King that his activity triggered the licensing requirement, and he was only charged with violating Section 922(a)(1)(A) after he received this notice but continued to advertise and sell guns without obtaining a license.

In his cursory argument in this appeal, King briefly references arguments raised in his motion to dismiss, but does not address or even acknowledge the district court's ruling on his clams. His arguments fail for the reasons cited by the district court. In addition, King does not explain how the 2022 amendment to the definition of "engage in business" calls into question the constitutionality of the prior definition, but simply cites the fact that the statutory definitions were amended as proof of ambiguity. Br. 32. Besides failing to provide any support for this claim, the fact that the definitions were amended does not demonstrate that the statutory

definitions in place at the time he was prosecuted did not adequately

inform King that his conduct triggered the licensing requirement.[21]

In short, the statutory scheme at the time of King's offense was not

void for vagueness as applied to King.[22] For these same reasons, the rule of

lenity has no application here. That rule applies only if "at the end of the

process of construing what Congress has expressed, . . . there is a grievous

ambiguity or uncertainty in the statue." *Shaw v. United States*, 580 U.S. 63,

71 (2016) (quotations and citations omitted). Here, the statutory scheme

clearly encompassed King's conduct and made plain that he was required to

obtain a license; indeed, ATF explicitly told him that his conduct triggered

---

[21] King also cites an ATF rule published in the Federal Register in April 2024 that addresses "engaged in the business," as well a civil lawsuit by several states challenging the rule under the Administrative Procedures Act, *Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2024 WL 2967340 (N.D. Tex. June 11, 2024). While King presents a lengthy discussion of the amended provisions and the district court's findings in the cited case, Br. 18-24, he does not state how the 2024 rule demonstrates that the statutory scheme applied in this case was unconstitutionally vague as applied to him. It was not, and these subsequent developments have no bearing on his claim here.

[22] This conclusion also disposes of his facial challenge to Section 922(a)(1)(A). *See United States v. Moore,* -- F. 4th --, 2024 WL 3629416, at *6 (3d Cir. Aug. 2, 2024) ("Since we reject Moore's as-applied challenge to § 922(g)(1), his facial challenge also fails: he cannot "establish that no set of circumstances exists under which the Act would be valid." *Rahimi*, 144 S. Ct. at 1898 (cleaned up).").

the licensing requirement. The rule of lenity is not implicated here, and King's claim to the contrary should be rejected.

### C. The Licensing Requirement Did Not Violate King's First Amendment or Statutory Right to Practice His Faith.

Section 923(a) requires an applicant for a firearms license to submit a photograph of the applicant. King claims that this aspect of the licensing requirement is unconstitutional as applied to him (and other members of the Amish faith) because the photograph requirement is an "unconstitutional condition" which violates his First Amendment and the Religious Freedom Restoration Act. Br. 33-34. King contends "that requiring a photo identification to secure a simple sale of a gun by a farmer to a neighbor is not narrowly tailored to any compelling governmental interest . . . ." Br. 34. King presents no further argument, nor does he acknowledge the district court's ruling on this issue. As the district court correctly found, this claim is meritless.

The RFRA provides that the government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering

that compelling governmental interest." 42 U.S.C. § 2000bb-1. RFRA thus provides "[that] sincere religious objectors must be given a pass to defy obligations that apply to the rest of us, if refusing to exempt or to accommodate them would impose a substantial burden on their sincere exercise of religion." *United States v. Christie*, 825 F.3d 1048, 1055 (9th Cir. 2016). The "unconstitutional conditions doctrine" prohibits the government from coercing people into giving up their constitutional rights in exchange for something else. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

King argued in his motion to dismiss the indictment that the licensing provision substantially burdened his exercise of religion because his Amish faith precluded him from being photographed. App. 129-30. In rejecting this claim, the district court stressed that King never applied for a license, and thus could not claim that he was denied the benefit of a license based on his refusal to comply with the photograph requirement, nor did he seek a religious exemption from this requirement. Accordingly, King could not show that his freedom to exercise his faith was substantially burdened by this provision of the licensing requirement. The court rejected King's "unconstitutional condition" claim on this same ground. App. 130-31.

The court again addressed King's First Amendment claim in its opinion denying King's post-trial motion.[23] The court stated:

> According to King, the Act categorically prohibits him and any other Amish member from selling firearms commercially because, in order to obtain a license, an applicant must include a photograph with their application. King again highlights the conundrum this requirement creates for him because of his religious beliefs against having his photograph taken. Although this argument has been repackaged, it suffers from the same deficiencies as before. Namely, King never applied for a license under the Act, nor did he seek a religious exemption from the photograph requirement. The Court has no way of knowing whether a request for an exemption would have been granted, and if he had been granted an exemption, whether King would have been denied a license for other reasons. King cannot refuse to apply for the privilege of a license to deal in firearms and then ask this Court to rule that the privilege was withheld from him unjustly.

App. 327.

King does not acknowledge the district court's ruling, let alone point to any error in the court's reasoning or conclusion. As in the district court, King has failed to show that the photograph requirement violated his First Amendment rights or his rights under the RFRA, or amounted to an unconstitutional condition, as he never sought a license or asserted any religious exemption. King's argument should be rejected.

---

[23] King did not reassert his First Amendment argument in his post-trial motion, but raised it is in his reply to the government's response to his post-trial motion. DDE # 62. While noting that King had waived his right to reassert this claim, the district court nonetheless addressed it.

## II. THE FORFEITURE OF THE FIREARMS AND AMMUNITION INVOLVED IN KING'S OFFENSE DOES NOT VIOLATE THE EIGHTH AMENDMENT

### Standard of Review

In reviewing a district court's forfeiture order, this Court reviews the court's legal conclusions de novo and its findings of facts for clear error. *United States v. Lacerda*, 958 F.3d 196, 216 (3d Cir. 2020). The Court exercises de novo review over an Eighth Amendment challenge to the proportionality of a forfeiture. *See United States v. Cheeseman*, 600 F.3d 270, 275 n.4 (3d Cir. 2010).

### Discussion

King contends that the district court's order directing him to forfeit all of the firearms that were involved in his violation of Section 922(a)(1)(A) offends the Constitution and cannot stand. Br. 34-38. King first asserts that the order should be vacated on the same constitutional grounds that compel reversal of his conviction. *See* Br. 34 ("Principally and primarily, the forfeiture exceeded the Second Amendment for the same reasons the crime charged itself exceeded the Second Amendment, offending the First and Fifth Amendments in the process."). He further asserts that the forfeiture order should be vacated because it constitutes an excessive fine in violation

of the Eighth Amendment. Br. 34, 38. To the extent that King's conclusory claims are sufficient to warrant appellate review, they are meritless.

First, King's Second Amendment claim may be summarily dismissed. While it is not entirely clear, to the extent that King is asserting that the forfeiture must be vacated because his conviction violates the Second Amendment (as well as the First and Fifth Amendments), no further discussion is merited. If King is asserting that the forfeiture order independently violates the Second Amendment, he presents no argument in support of this claim, and accordingly, it is waived. An appellant's brief must set forth the "'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) (quoting Fed. R. App. P. 28(a)(9)(A)). An issue raised only in a conclusory sentence in a brief is waived. *United States v. Burnett,* 773 F.3d 122, 135 (3d Cir. 2014). *See also United States v. DeMichael,* 461 F.3d 414, 417 (3d Cir. 2006) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (citation omitted). Thus, even if King contends that the forfeiture order itself offends the Second Amendment, this claim may be summarily dismissed.

King's Eighth Amendment challenge also fails. He again fails to present any argument in his brief. After briefly citing the applicable statutes and general case law, his substantive argument consists of one sentence: "In this case, the government criminally forfeited an entire lifetime of gun collection for the mere act of an Amish farmer offering to sell a few guns to a neighbor, a classic example of disproportionate punishment, and as such, Constitutionally excessive in contravention of the Eighth Amendment." Br.38.

Other than blatantly mischaracterizing his offense conduct (as he does throughout his brief), King presents no argument in support of his claim that the forfeiture constitutes an unconstitutionally excessive fine. While this alone warrants dismissal of King's claim, even assuming it is sufficient, his claim fails on the merits.

Whether forfeiture constitutes an excessive fine in violation of the Eighth Amendment is governed by the Supreme Court's decision in *United States v. Bajakajian*, 524 U.S. 321 (1998). In *Bajakajian*, the Supreme Court examined three factors to determine whether forfeiture was grossly disproportional to the offense: 1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; 2) other penalties authorized by the legislature and sentencing guidelines; and

3) the harm caused by the defendant. *Bajakajian*, 524 U.S. at 337-42. Interpreting *Bajakajian*¸ this Court adopted a similar test that incorporated an additional factor, namely, the nature of the substantive crime. *See United States v. Cheeseman*, 600 F.3d 270, 283-84 (3d Cir. 2010). King bore the burden of proving gross disproportionality. *See Cheeseman*, 600 F.3d at 283.

King failed to acknowledge, let alone address, any of these factors in the district court. Consideration of these factors further confirms that the forfeiture did not offend the Eighth Amendment.

First, King's criminal conduct clearly falls within the class of persons at whom the criminal statute was principally directed, as he repeatedly and regularly sold firearms without a license. Second, the forfeiture was not disproportional to the financial penalties applicable to King's offense. Although King asserted in the district court that the forfeiture order was impermissibly excessive because it was ten times higher than the authorized fine for his offense, DDE # 75, para. 4, he provided no factual support for this contention. The government, in contrast, explained that his contention was not correct, as the government's estimated value of the firearms of $135,000 fell far below the maximum fine of $250,000. King

did not counter the government's assessment.[24] Thus, the forfeiture order was commensurate with the applicable financial penalties, and certainly was not grossly disproportionate to those penalties.

Finally, King's offense caused significant harm. His conduct endangered the community because as an unlicensed dealer, he did not conduct background checks of prospective purchasers; indeed, he did not have access to the system needed to conduct such background checks. His records did not provide law enforcement with the information needed to match firearms to their source in the event they were stolen or used in a crime. His conduct also harmed those engaged in the same business who complied with the requirements of the statute, i.e., properly licensed dealers. Loss of his firearms inventory is not disproportionate; it is necessary to prevent him from continuing his criminal conduct.

In short, the order directing King to forfeit the firearms—that the jury specifically found were linked to his criminal offense—does not offend the Eighth Amendment. The district court's forfeiture order should be affirmed.

---

[24] The estimated value of the firearms also falls within the fine range recommended by the Sentencing Guidelines of $50,000 to $150,000. *See* U.S.S.G. § 5E1.2(c)(3).

## CONCLUSION

For the reasons stated above, the government respectfully requests

that the judgment of the district court be affirmed.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126

*/s Joseph A. LaBar*
JOSEPH A. LABAR
Assistant United States Attorney
Pa. Bar No. 38697

BERNADETTE McKEON
Assistant United States Attorney

United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8516

# CERTIFICATION

1. The undersigned certifies that this brief contains 12,231 words, exclusive of the table of contents, table of authorities, signature block, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

*/s Joseph A. LaBar*
JOSEPH A. LABAR
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

> Robert E. Barnes, Esq.
> Barnes Law
> 700 South Flower Street, Suite 1000
> Los Angeles, CA  90017

> */s Joseph A. LaBar*
> JOSEPH A. LABAR

DATED:  September 3, 2024.